**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 04 2015

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | |
|---|---|
| EDWARD A. DANLEY and <br> RENA DANLEY, <br><br>     PLAINTIFFS, <br><br> V. <br><br> MONDI BAGS USA, LLC; <br> GRAPHIC PACKAGING <br> INTERNATIONAL, INC.; <br> DELTA NATURAL KRAFT, LLC; <br> AND JOHN DOES 1-5, <br><br>     DEFENDANTS. | * <br> * <br> * <br> * <br> *    CIVIL ACTION NO. _515CV-0353JM-JJV_ <br> * <br> * <br> * <br> * <br> * <br> *    This case assigned to District Judge _Moody_ <br> *    and to Magistrate Judge _Volpe_ <br> * |

## NOTICE OF REMOVAL

Defendants Mondi Bags USA, LLC ("Mondi USA") and Delta Natural Kraft, LLC ("Delta Kraft"), pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, give notice that Civil Action No. 35CV-2015-332 styled as *Edward A. Danley, et al. v. Mondi Bags USA, LLC, et al.,* which is currently pending in the Circuit Court of Jefferson County, State of Arkansas, is hereby removed to the United States District Court for the Eastern District of Arkansas, the federal jurisdiction encompassing the Circuit Court of Jefferson County, Arkansas. In accordance with 28 U.S.C. § 1446, a copy of all process, pleadings and orders served upon Defendants therein is filed simultaneously herewith and attached hereto as Exhibit "A". The grounds for the removal of this action are as follows:

## DIVERSITY OF CITIZENSHIP

1.    This Court has jurisdiction over this case on the ground of diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.

4775130.1

1

2.     The Complaint and accompanying Summons identify Plaintiffs as residing in George County, Mississippi, thus creating citizenship for Plaintiffs in Mississippi.

3.     Defendant Mondi USA is a Delaware limited liability corporation, the member of which is Mondi Romeoville, Inc.  Mondi Romeoville Inc., is a Delaware corporation with its principal place of business in Atlanta, Georgia.  Therefore, citizenship for Mondi USA is in Delaware and Georgia.

4.     Defendant Graphic Packaging International, Inc. ("GPI"), is a Delaware corporation with its principal place of business in Atlanta, Georgia.  Therefore, GPI is a citizen of Delaware and Georgia.  GPI consents to this removal.

5.     Putative defendant Delta Kraft is a former Delaware limited liability corporation that merged into Graphic Flexible Packaging, LLC ("GFP"), effective as of June 30, 2012.  A true and correct copy of the Certificate of Merger is attached as Exhibit "B".  As such, Delta Kraft is not a proper party to this action and its citizenship is irrelevant for the purpose of determining diversity jurisdiction for this removal.  In any event, the member of Delta Kraft prior to the merger was GPI, a Delaware corporation with its principal place of business in Atlanta, Georgia.  Thus, Delta Kraft was a citizen of Delaware and Georgia.  To the extent its consent is needed, Delta Kraft consents to this removal.

6.     GFP was the surviving corporation of the merger between Delta Kraft and GFP. GFP is a Delaware limited liability corporation that changed its name to Mondi Bags USA, LLC on June 30, 2014.  Therefore, Delta Kraft, GFP, and Mondi USA are all the same entity for which citizenship is in Delaware and Georgia.

7.     In consideration of the above, therefore, complete diversity of citizenship exists between Plaintiffs and the Defendants.

## AMOUNT IN CONTROVERSY

8.      Plaintiffs allege in Paragraph 102 of the Complaint that "[t]he injuries and damages sustained by the [Plaintiffs] are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases..." On that basis, without admitting liability or the extent of alleged damages, Defendants state that the amount in controversy is in excess of $75,000, exclusive of interest and costs.

## ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

9.      Mondi USA and Delta Kraft received purported service of the Summons, Complaint, and Requests for Admissions on or around October 5, 2015.

10.      This Notice of Removal is filed within thirty (30) days of October 5, 2015, the date Mondi USA and Delta Kraft received notice of this action.

11.      This action is not an action described in 28 U.S.C. § 1445.

12.      Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over any and all claims for which it does not have original jurisdiction.

13.      Pursuant to 28 U.S.C. § 1446(a), a copy of all of the process, pleadings, orders, and documents from the Circuit Court of Jefferson County action which have been served upon Mondi USA and Delta Kraft are being filed with this Notice of Removal.

14.      All defendants consent to this removal.

15.      Promptly after filing this Notice of Removal, written notice hereof will be given to Plaintiffs and filed with the Clerk for the Circuit Court of Jefferson County, State of Arkansas, pursuant to 28 U.S.C. § 1446(d).

Respectfully submitted this 4th day of November, 2015.

Kevin A. Crass, AR Bar No. 84029
Kathrine C. Stephens, AR Bar No. 2015125
Friday Eldredge & Clark, LLP
400 W. Capitol Avenue, Suite 2000
Little Rock, AR  72201
Phone:  (501) 376-2011
Fax:  (501) 244-5370
E-Mail:     crass@fridayfirm.com
                kstephens@fridayfirm.com

Of Counsel

Charles K. McKnight, Jr.
Georgia Bar No. 495810
Vanessa Y. Suh
Georgia Bar No. 979276
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle - Suite 400
Atlanta, Georgia 30339
Telephone:     (770) 434-6868
Facsimile:     (770) 434-7376
Email: cmcknight@taylorenglish.com
           vsuh@taylorenglish.com

*Attorneys for Defendant Mondi Bags USA, LLC
and Delta National Kraft, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Removal has been forwarded to Plaintiffs by United States mail, properly addressed and postage prepaid to the following address:

Don P. Chaney
CHANEY LAW FIRM, P.A.
P.O. Box 1405
Arkadelphia, AK 71923
*Attorney for Plaintiff*

David Baria
Baria-Williamson, PLLC
544 Main St.
Bay St. Louis, MS 39520
*Attorney for Plaintiff*

Robert C. Williamson
Baria-Williamson, PLLC
4316 Old Canton Road, Suite 100A
Jackson, MS 39211
*Attorney for Plaintiff*

Robert L. Henry, III
BARBER LAW FIRM PLLC
3400 Simmons Tower
425 West Capitol Avenue
Little Rock, AR 72201
*Attorney for Defendant Graphic Packaging International, Inc.*

Respectfully submitted this 4th day of November, 2015.


_____
Kevin A. Crass

*Attorney for Defendants Mondi Bags USA, LLC and Delta National Kraft, LLC*

4775130.1

5



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

null / ALL
**Transmittal Number: 14319708**
**Date Processed: 10/06/2015**

**Primary Contact:**    Roseann Alexander
Graphic Packaging Holding Company
1500 Riveredge Parkway
Suite 100 Law Dept, 9th Floor
Atlanta, GA 30328

| | |
|---|---|
| **Entity:** | Delta Natural Kraft, LLC<br>Entity ID Number  3059317 |
| **Entity Served:** | Delta Natural Kraft, LLC |
| **Title of Action:** | Edward A. Danley vs. Mondi Bags USA, LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Personal Injury |
| **Court/Agency:** | Jefferson County Circuit Court, Arkansas |
| **Case/Reference No:** | 35CV-2015-332 |
| **Jurisdiction Served:** | Arkansas |
| **Date Served on CSC:** | 10/05/2015 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Don P. Chaney<br>870-246-0600 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com



EXHIBIT

A

PENGAD 800-631-6989

# CHANEY LAW FIRM, P.A.

**P.O. Box 1405**
**526 Main Street, Suite 204**
**Arkadelphia, Arkansas 71923**
**Phone: (870) 246-0600**

Donald Price Chaney, Jr.
Nathan Price Chaney[†‡]
Hilary Martin Chaney
Sterling Taylor Chaney

www.chaneylaw.com

Facsimile: (866) 734-0971
Writer's Email: Don@chaneylaw.com
[†] Registered Patent Attorney
[‡] Also licensed in Texas

September 29, 2015

**CERTIFIED MAIL NO.: 7014 1820 0002 0926 9722**

Corporation Service Company
Registered Agent for Service of Process
for Delta Natural Kraft, LLC
300 Spring Building, Suite 900
300 South Spring Street
Little Rock, Arkansas   72201

> RE:   *Edward A. Danley and Rena Danley v. Mondi Bags USA, LLC;*
> *Graphic Packaging International, Inc.; Delta Natural Kraft, LLC;*
> *and John Does 1-5*
> Jefferson County Circuit No.: 35CV-2015-332

Dear Corporation Service Company:

As an attorney for the Plaintiffs in the above action, I am serving you as the registered agent for service of process for Delta Natural Kraft, LLC, with (1) the *Complaint* filed in this action; (2) a *Summons* explaining what actions must be taken; and (3) a set of *Requests for Admissions* to be answered.

Service of process is being completed upon you pursuant to Rule 4 of the Arkansas Rules of Civil Procedure.

The company for which you have accepted service of process has thirty (30) days from your receipt hereof in which to answer or otherwise plead to the allegations of the Complaint and (45) days to answer the Request for Admissions. If it fails to do so, the Court may grant the Plaintiffs all relief requested in the Complaint without further notice to you or the company for which you have accepted service of process. I would urge you to immediately notify the company for which you have accepted service to consult its corporate attorney, and to notify the insurance carrier at once about this service of legal process upon you to commence this lawsuit.

Letter to Corporation Service Company
September 29, 2015
Page 2 of 2

Sincerely yours,

Don P. Chaney

DPC/kmm
Enclosures

cc:    Mr. Robert C. Williamson
       Mr. David Baria

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
### CIVIL DIVISION
2nd

EDWARD A. DANLEY and                                        **PLAINTIFF**
RENA DANLEY

**v.**                          35CV-2015 332

MONDI BAGS USA, LLC;                                        **DEFENDANT**
GRAPHIC PACKAGING INTERNATIONAL, INC.;
DELTA NATURAL KRAFT, LLC; and
JOHN DOES 1-5

### SUMMONS

The State of Arkansas to Defendant:
Delta Natural Kraft, LLC
C/O Corporation Service Company,
As Registered Agent for Service of Process
300 Spring Building, Suite 900
300 S. Spring Street
Little Rock, AR 72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within
30 days after service of this summons on you (not counting the day you received it) — or 60 days if
you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must
file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the
Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and
address are: Don P. Chaney, CHANEY LAW FIRM, P.A., P.O. Box 1405, Arkadelphia, Arkansas
71923.

If you fail to respond within the applicable time period, judgment by default may be entered against
you for the relief demanded in the complaint.

LAFAYETTE WOODS, SR., Circuit Clerk
CLERK OF COURT

Address of Clerk's Office:
Jefferson Circuit Court
Jefferson County Circuit Clerk
101 E Barraque St.
Pine Bluff, Arkansas 71601

[Signature of Clerk or Deputy Clerk]

Date:                     JUL 1 0 2015

### PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____
_____ [place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____
_____ after he/she refused to receive it when I offered it to him/her; or

1

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at ___
_____ [address] with _____ [name], a person at least 14
years of age who resides there, on _____ [date]; or
☐ I delivered the summons and complaint to _____ [name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of _____
_____ [name of defendant] on _____ [date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days
after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $_____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

By:    _____        _____
       [Signature of server]         [Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____    By:    _____
                                       [Signature of server]
Address: _____

_____        _____
                                       [Printed name]
Phone: _____

**Subscribed and sworn to before me this date:**    | **Additional information regarding service or attempted service:**

_____.       Complaint attached _____

                                     _____
_____
Notary Public                        _____
My commission expires: _____.

                            2

IN THE CIRCUIT COURT OF JEFFERSON, COUNTY, ARKANSAS
CIVIL DIVISION
2nd

EDWARD A. DANLEY and                                              **PLAINTIFFS**
RENA DANLEY

v.                                      35CV - 2015 - _332_

MONDI BAGS USA, LLC;                                             **DEFENDANTS**
GRAPHIC PACKAGING INTERNATIONAL, INC.;
DELTA NATURAL KRAFT, LLC; and
JOHN DOES 1-5

---

## COMPLAINT

---

COME NOW the Plaintiffs, Edward A. Danley and Rena Danley (collectively "the

Danleys") and for their cause of action against Delta National Kraft, LLC ("Delta Kraft"),

Graphic Packaging International, Inc. ("GPI"), and Mondi Bags USA, LLC ("Mondi USA"), and

state:

### THE PARTIES

1.      The Danleys are adult residents of George County, Mississippi.

2.      Delta Kraft is an Arkansas Limited Liability Company whose registered agent for

service of process is Corporation Service Company, 300 Spring Building, Suite 900, 300 S.

Spring Street, Little Rock, AR 72201.

3.      Mondi USA, formerly Graphic Flexible Packaging, LLC, is a Delaware

Corporation qualified to do business in Arkansas whose registered agent for service of process is

Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring St, Little Rock,

AR 72201.

4.      GPI is a Delaware Corporation qualified to do business in Arkansas whose

registered agent for service of process is The Prentice-Hall Corporation System, Arkansas, 300

Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201.

FILED IN MY OFFICE AND SUMMO
ISSUED AT 10:15 O'CLOCK
JUL 1 0 2015    DAT
LAFAYETTE WOODS, SR., CLERK

5.     The fictitious John Doe Defendants, whether singular or plural, are those entity or entities, or individual or individuals, who are or may be liable to the Danleys for the wrongful conduct describedin this Complaint , or who may be responsible for the damages sustained by the Danleys as described in this Complaint..

6.     The Danleys aver the identities of these fictitious party defendants are unknown to them  or if their names are known to the Danleys, their identities as proper defendants are not known to the Danleys  and that their true names will be substituted by amendment when ascertained.

7.     Plaintiff's attorney's affidavit about the John Doe Defendants is included below.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction under the Arkansas Constitution.

9.     Venue is proper as a substantial part of the events or omissions giving rise to the claim occurred in Jefferson County, Arkansas.[1]

10.     Personal jurisdiction over each of the Defendants is proper under Arkansas Code § 16-4101 because each of the Defendants is qualified to do business or doing business in Arkansas and the events giving rise to this Complaint arose from their respective business activities within Arkansas.

## DEFENDANTS' RELATIONSHIPS

11.     GPI is a Fortune 1000 company who provides packaging for food, beverages and other consumer products companies.

12.     GPI is the wholly owned subsidiary of Graphic Packaging Corporation ("GPC"), which is the wholly owned subsidiary of Graphic Packaging Holding Company ("GPHC"), a

---

[1] Ark. Code Ann. § 16-55-213(a)(1).

publicly traded company, neither of which conduct significant business or have independent assets or operations.[2]

13.     On December 8, 2011, GPI combined its multi-wall bag and specialty plastics packaging businesses with the Kraft paper and multi-wall bag businesses of Delta Kraft and Mid-America Packaging, LLC (collectively "DNK"), both wholly owned subsidiaries of Capital Five Investments, LLC ("CVI").[3]

14.     Under the terms of the transaction, GPI formed a new limited liability company, Graphic Flexible Packaging, LLC ("GFP") and contributed its ownership interests in multi-wall bag and specialty plastics packaging subsidiaries to it.[4]

15.     CVI concurrently contributed its ownership interests in DNK to GFP.[5]

16.     Following the combination, GPI owned 87% of GFP and exercised complete control over its day-to-day operations, making it effectively GPI's instrumentality.[6]

17.     On information and belief, GPI's control of GFP extended to the day-to-day management and operations of a Kraft paper mill at 1701 Jefferson Parkway, Pine Bluff, AR 71602.

18.     Ownership of the real property and mill itself was vested in Delta Kraft, which on information and belief also was subject to GPI's control and a key component of GPI's operation of the mill.

---

[2] Source: auditor's notesand comments  to GHPC and its subsidiaries combined audited financial statements, 201 et seq.

[3] Id.

[4] Id.

[5] Id.

[6] Id.

19.    On June 30, 2014, Moni Romeoville, Inc. purchased all of the stock or membership interests in GFP and changed its name to Mondi Bags USA, LLC. [7]

## THE CAUSE OF ACTION

20.    In converting pulp wood to paper, the Pine Bluff paper mill produced a by-product called Crude Tall Oil or Tall Oil Soap.

21.    Defendants shipped Tall Oil Soap by truck and rail to other plants for refinement into substances used in consumer, industrial, and construction products.

22.    Defendants required "top loading" of the truck tankers and rail tanker cars.

23.    Tall Oil Soap is a dark viscous liquid, both smelly and slippery, and was frequently spilled during the loading of truck and rail tankers at the mill. .

24.    The Defendants required truckers to load their tanker trailers from a facility used to load rail tanker cars, a four-sided platform 15- 20 feet above the ground

25.    Stairs from the ground below, opened on the rear (south) side of the rail car loading platform.

26.    Guard rails closed each end (east and west) of the rail car loading platform.

27.    A hose connecting the storage tank of Tall Oil Soap to the tanker trailers or rail tanker cars on the north side of the platform.

28.    The front (north) side of the rail tanker car loading platform where the hose was located was an unprotected opening.

29.    Defendants required truckers to use the rail car tanker loading platform though it knew there were safer alternative facilities, means and methods available.

---

[7] K & L Gates December 22, 2014 Letter to Akransas Department of Environmental Quality.

30.     Defendants required the truck tanker loading operations to continue at the facility even when the surface of the platform, the stairs to the platform, and the ground around the platform were contaminated with Tall Oil Soap.

31.     On July 11, 2012, Edward Danley parked his truck and tanker trailer as directed on the north side of the rail car loading platform to load Tall Oil Soap into his tanker trailer for delivery to Graphic Packaging's plant in Monroe, Louisiana.

32.     Edward Danley had to park at an angle to the platform rather than exactly parallel because a rail tanker car was in the way.

33.     After parking, Edward Danley exited his truck, climbed up onto the tanker trailer, opened the dome hatch, climbed down the tanker trailer, and walked up the stairs to the platform.

34.     The ground, the stairs, and the platform were covered with Tall Oil Soap.

35.     The bottoms of Edward Danley's work boots were coated with Tall Oil Soap, and he was forced, as a practical matter, to encounter a known or obvious risk to perform his job.[8]

36.     Once on the platform, Edward Danley pulled down the hose harness and placed it in the open hatch.

37.     As he turned around to go back down the stairs, Edward Danley's feet slipped out from under him, and he fell backwards off the unguarded front (north) side of the platform 15-20 feet to the ground.

38.     Edward Danley landed on his neck, back, shoulder, ribs and other body parts.

39.     Edward Danley was transported to the Jefferson Regional Medical Center emergency room for evaluation and treatment.

---

[8] *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990).

5

40.    The impact from the fall (hereinafter referred to as "Edward Danley's fall") caused the bodily injuries and damages to Edward Danley described below.

41.    At all times, Edward Danley was a business invitee of Defendants.

## DUTIES OWED BY DEFENDANTS

42.    Defendants were required to follow safety rules and standards to maintain their loading facility and premises in a reasonably safe condition to prevent Edward Danley and others from foreseeable workplace dangers, both before and at the time of the Edward Danley's fall.[9]

43.    Defendants were required to follow safety rules and standards to protect Edward Danley from foreseeable workplace dangers of which Defendants knew or should have known about for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[10]

44.    Defendants knew or should have known that a person loosing their footing on surfaces covered with Tall Oil was a foreseeable risk.

45.    Defendants knew or should have known that falls from the rail truck platform was a foreseeable risk.

46.    Defendants were required to provide and maintain clean and dry surfaces on the platform and on the passageways and stairs used to access the platform for the safety of Edward Danley and others both before and at the time of Edward Danley's fall. [11]

---

[9] AMI Civ. 1104 (2015); 29 C.F.R. § 1910.176(c); *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[10] *DeVazier v. Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974); 29 C.F.R. § 1910.176(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[11] 29 C.F.R. 19.10.23.

6

47.     Defendants were required to have a guard rail or other suitable  protections on the front (north) side of the platform for the safety of Edward Danley and others, both before and at the time of Edward Danley's fall.[12]

48.     Defendants were required to follow safety rules and standards to protect Edward Danley from dangers he might discover, for his safety and others, both before and at the time of Edward Danley's fall.[13]

49.     Defendants were required to follow safety rules and standards to anticipate dangerous conditions that would cause physical harm, regardless if such dangerous conditions were open and obvious, for the safety of Edward Danley and others, both before and at the time of Edward Danley's fall. [14]

50.     Defendants were required to follow safety rules and standards to inspect the loading facility and premises to discover the actual condition of the premises for the safety of Edward Danley and others, both before and at the time of Edward Danley's fall. [15]

51.     Defendants were required to follow safety rules and standards to institute a training program for employees to teach them how to inspect the loading facility and premises to discover the actual condition of the premises for the safety of Edward Danley and others, both before and at the time of Edward Danley's fall..[16]

52.     Defendants were required to follow safety rules and standards to provide training to employees to teach them how to inspect the loading facility and/or premises to discover the

---

[12] 29 C.F.R. 1910.23(a)(1)(b)(3)(c)(1)(3)(e)(3)(v)(c).

[13] *DeVazier v. Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974).

[14] *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Kuykendall v. Newgent*, 255 Ark. 945, 504 S.W.2d 344 (1974); 29 C.F.R. § 1910.1769(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[15] *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Restatement Second of Torts* § 343 cmt b (1965); 29 C.F.R. § 1910.176(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[16] 29 C.F.R. § 1910.9(b).

7

actual condition of the premises for the safety of Edward Danley and others, both before and at the time of Edward Danley's fall. .[17]

53.     Defendants were required to follow safety rules and standards to warn of dangerous conditions discovered following inspection of the loading facility and premises for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[18]

54.     Defendants were required to follow safety rules and standards to institute a training program for employees to teach them how to warn of dangerous conditions discovered following inspection of the loading facility and/or premises for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[19]

55.     Defendants were required to follow safety rules and standards to provide training to employees to teach them how to warn of dangerous conditions discovered following inspection of the loading facility and premises for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[20]

56.     Defendants were required to follow safety rules and standards to repair the premises after discovering any defective conditions for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[21]

57.     Defendants were required to follow safety rules and standards to institute a training program for employees to teach them how to repair the premises after discovering any

---

[17] 29 C.F.R. § 1910.9(b).

[18] *Kelley v. National Union Fire Ins. Co.*, 327 Ark. 329, 937 S.W.2d 660 (1997); *Jenkins v. Hestand's Grocery*, 320 Ark. 485, 898 S.W.2d 30 (1995); *Restatement Second of Torts* § 343 cmt b (1965).

[19] 29 C.F.R. § 1910.9(b).

[20] 29 C.F.R. § 1910.9(b).

[21] *Trent v. KMS, Inc.*, 55 Ark. App. 355, 935 S.W.2d 6 (1996); *Restatement Second of Torts* § 343 cmt d (1965).

8

defective condition for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[22]

58.     Defendants were required to follow safety rules and standards to provide training to employees to teach them how to repair the premises after discovering the defective condition for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[23]

59.     Defendants were required to follow safety rules and standards to use ordinary care for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[24]

60.     Defendants were required to hire only employees with the skills and aptitude needed to follow the safety rules and standards listed above and to supervise their performance to ensure the employees complied with the safety rules listed above.

61.     Defendants were not allowed to needlessly endanger Edward Danley or anyone else by violating the safety rules and standards listed above.

## DUTIES VIOLATED BY DEFENDANTS

62.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to maintain their loading facility and/or premises in a reasonably safe condition to prevent Edward Danley and others from foreseeable workplace dangers.[25]

---

[22] 29 C.F.R. § 1910.9(b).

[23] 29 C.F.R. § 1910.9(b).

[24] AMI Civ. 305 (2015).

[25] AMI Civ. 1104 (2015); 29 C.F.R. § 1910.176(c); *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

9

63.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety

rules and standards to protect Edward Danley from foreseeable workplace dangers of which

Defendants knew or should have known about for the safety of Edward Danley and others.[26]

64.     At the time of Edward Danley's fall, Defendants violated the duty to adopt and

follow safety rules and standards to protect Edward Danley of the foresseable risk of losing his

balance from Tall Oil.

65.     At the time of Edward Danley's fall, Defendants violated the duty to adopt and

follow safety rules and standards to protect Edward Danley from the foresseable risk of falling

from the platform.

66.     At the time of Edward Danley's fall, Defendants violated the duty to provide and

maintain clean and dry surfaces on the platform and on the passageways and stairs used to access

the platform for the safety of Edward Danley.

67.     At the time of Edward Danley's fall, Defendants violated the duty to have a

guard rail on the front (north) side of the platform or have other safeguards from falls for the

safety of Edward Danley and others.[27]

68.     At the time of Edward Danley's fall, Defendants violated the duty to follow

safety rules and standards to protect Edward Danley from losing his footing on dangers he might

discover, for his safety and others.[28]

69.     At the time of Edward Danley's fall, Defendants violated the duty to follow

safety rules and standards to anticipate dangerous conditions that would cause physical harm,

---

[26] *DeVazier v. Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974); 29 C.F.R. § 1910.176(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[27] 29 C.F.R. 1910.23(a)(1)(b)(3)(c)(1)(3)(e)(3)(v)(c).

[28] *DeVazier v. Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974).

10

regardless if such dangerous conditions were open and obvious, for the safety of Edward Danley and others.[29]

70.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to inspect the loading facility and premises to discover the actual condition of the premises for the safety of Edward Danley and others.[30]

71.     At the time of  Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to institute a training program for employees to teach them how to inspect the loading facility and/or premises to discover the actual condition of the premises for the safety of Edward Danley and others.[31]

72.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to provide training to employees to teach them how to inspect the loading facility and

73.     premises to discover the actual condition of the premises for the safety of Edward Danley and others.[32]

74.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to warn of dangerous conditions discovered following inspection of the loading facility and/or premises for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[33]

---

[29] *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Kuykendall v. Newgent*, 255 Ark. 945, 504 S.W.2d 344 (1974); 29 C.F.R. § 1910.1769(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[30] *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Restatement Second of Torts* § 343 cmt b (1965); 29 C.F.R. § 1910.176(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[31] 29 C.F.R. § 1910.9(b).

[32] 29 C.F.R. § 1910.9(b).

[33] *Kelley v. National Union Fire Ins. Co.*, 327 Ark. 329, 937 S.W.2d 660 (1997); *Jenkins v. Hestand's Grocery*, 320 Ark. 485, 898 S.W.2d 30 (1995); *Restatement Second of Torts* § 343 cmt b (1965).

11

75.    At the time of Edward Danley's fall, Defendants violated the duty to follow
safety rules and standards to institute a training program for employees to teach them how to
warn of dangerous conditions discovered following inspection of the loading facility and
premises for the safety of Edward Danley and others.[34]

76.    At the time of Edward Danley's fall, Defendants violated the duty to follow
safety rules and standards to provide training to employees to teach them how to warn of
dangerous conditions discovered following inspection of the loading facility and premises for the
safety of Edward Danley and others.[35]

77.    At the time of Edward Danley's fall, Defendants violated the duty to follow safety
rules and standards to repair the premises after discovering the defective condition for the safety
of Edward Danley and others.[36]

78.    At the time of Edward Danley's fall, Defendants violated the duty to follow safety
rules and standards to institute a training program for employees to teach them how to repair the
premises after discovering the defective condition for the safety of Edward Danley and others.[37]

79.    At the time of Edward Danley's fall, Defendants violated the duty to follow safety
rules and standards to provide training to employees to teach them how to repair the premises
after discovering the defective condition for the safety of Edward Danley and others.[38]

80.    At the time of Edward Danley's fall, Defendants violated the duty to follow
safety rules and standards to use ordinary care for the safety of Edward Danley and others.[39]

---

[34] 29 C.F.R. § 1910.9(b).

[35] 29 C.F.R. § 1910.9(b).

[36] *Trent v. KMS, Inc.*, 55 Ark. App. 355, 935 S.W.2d 6 (1996); *Restatement Second of Torts* § 343 cmt d (1965).

[37] 29 C.F.R. § 1910.9(b).

[38] 29 C.F.R. § 1910.9(b).

[39] AMI Civ. 305 (2015).

81.     At the time of Edward Danley's fall,  Defendants violated the duty to hire only employees with the skills and aptitude needed to follow the safety rules and standards listed above and to supervise their performance to ensure the employees complied with the safety rules listed above . At the time of the Edward Danley's fall, Defendants needlessly endangered Edward Danley and others by violating the safety rules and standards listed above.

## CAUSATION OF THE DANLEY'S INJURIES AND DAMAGES

82.     The injuries and damages sustained by the Danleys, more particularly described below, were produced in a natural and continuous sequence from Defendants' violation of one or more of the above described safety rules, duties, and standards.[40]

83.     The injuries and damages sustained by the Danleys were a probable consequence from Defendants' violation of one or more of the above described safety rules, duties, and standards.[41]

84.     Workplace premises liability injuries are a foreseeable risk of harm, as approximately 25% of reported workplace injuries each result from the workplace being maintained in an unreasonably safe condition.

85.     Hundreds of thousands of workers fall each year, and hundreds of workers are killed

86.     Fractured bones result from approximately 5% of these falls.

87.     Falls are the most common cause of lost work time.

88.     Approximately 22% of falls cause over 31 days of missed work.

89.     Approximately 8 million emergency room visits are made for slips, trips and falls an annual basis.

---

[40] AMI Civ. 501 (2015).

[41] *Ouachita Wilderness Inst. v. Mergen*, 329 Ark. 405, 415, 947 S.W.2d 780, 785 (1997).

90.     Defendants should have foreseen and anticipated that a violation of one or more

of the above described safety rules, duties, and standards would constitute an appreciable risk of

harm to others, including the Danleys.[42]

91.     If the Defendants had not violated one or more of the above described safety

rules, duties, and standards, then the Danleys' injuries and damages would not have occurred.[43]

## COMPENSATORY DAMAGES SUSTAINED BY THE DANLEYS

92.     The injuries and damages sustained by Edward Danley because of Defendants'

violation of one or more of the above described safety rules, duties, and standards, include but

are not limited to:

> A.     Serious and permanent bodily injuries to Edward Danley's
> neck, back, and other parts of his body, which is a life-
> altering event causing Edward Danley to lose the ability to
> enjoy a normal quality of life, and depriving him of the
> right to live his life in comfort and ease without added
> inconvenience or diminution of physical vigor;[44]
>
> B.     Aggravation of a condition(s) already then existing at the
> time of Edward Danley's fall that predisposed Edward
> Danley to injury to a greater extent than another person;[45]
>
> C.     Medical expenses incurred in the past and reasonably
> expected to be incurred, and transportation expenses to
> obtain such medical treatment;[46]

---

[42] *State Farm Mut. Auto. Ins. Co. v. Pharr*, 305 Ark. 459, 464, 808 S.W.2d 769, 771-72 (1991) (following *Machine, Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980)).

[43] AMI Civ. 501 (2015).

[44] AMI Civ. 2202 (2015); *Sanson v. Allinson*, 2014 Ark. App. 619, 447 S.W.3d 151; *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2007); *Fayetteville Diagnostic Clinic v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001); *Wheeler v. Bennett*, 312 Ark. 411, 849 S.W.2d 952 (1993); *Adkins v. Kelley*, 244 Ark. 199, 424 S.W.2d 373 (1968) (quoting Henry Woods, *Earnings and Earning Capacity as Elements of Danger in Personal Injury Litigation*, 18 Ark. L. Rev. 304, 305 (1964)).

[45] AMI Civ. 2203 (2015); *Sanson v. Allinson*, 2014 Ark. App. 619, 447 S.W.3d 151; *Primm v. U.S. Fid. & Guar. Ins. Corp.*, 324 Ark. 409, 922 S.W.2d 319 (1996); *Owen v. Dix*, 210 Ark. 562, 196 S.W. 319 (1946); *see also Kudabeck v. Kroger Co.*, 338 F.3d 856 (8th Cir. 2003); *Tedder v. Am. Railcar Indus.*, 739 F.3d 1104 (8th Cir. 2014).

[46] AMI Civ. 2204 (2015); *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2007); *Fayetteville Diagnostic Clinic v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001); *Wal-Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991); *Honeycutt v. Walden*,

D.      Physical pain and suffering experienced in the past and reasonably expected to be experienced;[47]

E.      Loss of income in the past, including but not limited to hiring a substitute driver,[48] and loss of income reasonably expected to be experienced;[49]

F.      Loss of earning capacity due to permanent physical impairment from the injuries caused by Edward Danley's fall;[50]

G.      Mental anguish experienced in the past and reasonably expected to be experienced, which includes but is not limited to Edward Danley's loss of quality of life due to permanent injuries causing chronic pain that limits his activities;[51]

H.      The reasonable expense of any necessary help in Edward Danley's home in the past, and reasonably certain to be required because of his injuries injuries.[52]

---

294 Ark. 440, 743 S.W.2d 809 (1988); *Matthews v. Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983); *Williams v. Gates*, 275 Ark. 381, 630 S.W.3d 34 (1982); *Haney v. Noble*, 250 Ark. 557, 466 S.W.2d 467 (1971) (citing *Belford v. Humphrey*, 244 Ark. 211, 424 S.W.2d 526 (1968)).

[47] AMI Civ. 2205 (2015); *Fayetteville Diagnostic Clinic v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001); *RLI Ins. Co. v. Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991); *Bill Davis Trucking, Inc. v. Prysock*, 301 Ark. 387, 784 S.W.2d 755 (1990); *Handy Dan Home Improv. Center, Inc. v. Peters*, 286 Ark. 102, 689 S.W.2d 551 (1985).

[48] AMI Civ. 3d 2206 (2013); *Swenson v. Hampton*, 244 Ark. 104, 424 S.W.2d 165 (1968); *Cates v. Brown*, 278 Ark. 242, 645 S.W.2d 658 (1983); *Sharp v. Great Southern Coaches, Inc.*, 256 Ark. 773, 510 S.W.2d 266 (1974); *John Hancock Mut. Life Ins. Co. v. Magers*, 199 Ark. 104, 132 S.W.2d 841 (1939); Henry Woods, *Earnings and Earning Capacity as Elements of Danger in Personal Injury Litigation*, 18 Ark. L. Rev. 305, 308-09 (1965).

[49] AMI Civ. 2206 (2015); *Swenson v. Hampton*, 244 Ark. 104, 424 S.W.2d 165 (1968); *Cates v. Brown*, 278 Ark. 242, 645 S.W.2d 658 (1983).

[50] AMI Civ. 2207 (2015); *Sanson v. Allinson*, 2014 Ark. App. 619, 7, 447 S.W.3d 151; *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2007); *Collins v. Hinton*, 327 Ark. 159, 937 S.W.2d 164 (1997); *Gipson v. Garrison*, 308 Ark. 344, 824 S.W.2d 829 (1992); *Bill Davis Trucking, Inc. v. Prysock*, 301 Ark. 387, 784 S.W.2d 755 (1990); *West Union v. Vostatek*, 302 Ark. 219, 788 S.W.2d 952 (1990); *Honeycutt v. Walden*, 294 Ark. 440, 743 S.W.2d 809 (1988); *Haney v. Noble*, 250 Ark. 557, 466 S.W.2d 467 (1971); *Blissett v. Frisby*, 249 Ark. 235, 458 S.W.2d 735 (1970); *Hogan v. Hill*, 229 Ark. 758, 318 S.W.2d 580 (1958); *Britt Trucking Co. v. Ringgold*, 209 Ark. 769, 192 S.W.2d 532 (1946).

[51] AMI Civ. 2205 (2015); *RLI Ins. Co. v. Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991); *Chicago, R.I. & P. Ry. Co. v. Caple*, 207 Ark. 52, 179 S.W.2d 151 (1944); *Scott-Burr Stores Corp. v. Foster*, 197 Ark. 232, 122 S.W.2d 165 (1938); Howard W. Brill, *Law of Damages* § 29 (5th ed. Thompson West 2004).

[52] AMI Civ. 2209 (2015); *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Carr v. Nance*, 2010 Ark. 497, 370 S.W.3d 826; *Jackson v. United States*, 526 F. Supp. 1149 (E.D. Ark. 1981), *aff'd*, 696 F.2d 999 (8th Cir. 1982); *Perkins Oil Co. of Del. v. Fitzgerald*, 197 Ark. 14, 121 S.W.2d 877 (1938).

93.     The separate Plaintiff, Rena Danley, is the spouse of the injured Plaintiff, Edward
Danley.

94.     Rena Danley sustained damages for the loss of services, society, companionship,
and marriage relationship of her husband.

95.     Rena Danley should be fully and fairly compensated for loss of consortium
damages.

96.     Defendants' violation of one or more of the above described safety rules, duties,
and standards proximately caused Rena Danley's loss of consortium damages.[53]

## PUNITIVE DAMAGES

97.     Besides the compensatory damages for actual losses and damages sustained by
Plaintiffs, the Danleys should also be awarded punitive damages to deter other wrongdoers and
to punish the Defendants because their violation of one or more of the above described safety
rules, duties and standards were willfull, wanton, and reckless.

98.     Defendants knew or ought to have known, in light of the viscous and slippery
nature and properties of Tall Oil Soap, that allowing it to accumulate on the ground, the stairs,
and the platform 15-20 feet above the ground would naturally and probably result in injury.[54]

99.     Despite this knowledge, Defendants continued to allow Tall Oil Soap to remain
on the ground, the stairs, and the platform 15-20 feet above the ground on Defendants premises,
which shows a conscious indifference to the health and safety of Edward Danley and others, and

---

[53] AMI Civ. 2211 (2015); *Mo. Pac. Trans. Co. v. Miller*, 227 Ark. 351, 299 S.W.2d 41 (1957).

[54] *Carr v. Nance*, 2010 Ark. 497, 370 S.W.3d 826 (2010).

a conscious disregard of a known risk of harm to Edward Danley and others from which malice may be inferred.[55]

100.    Defendants' lack of effort to repair or clean the Tall Oil Soap from their premises, or have a training program or provide training or to supervise their employees to repair or clean the Tall Oil Soap from their premises, constitutes a reckless disregard of the consequences from which malice may be inferred.[56]

101.    Defendants' willful, wanton, and reckless violation of one or more of the above described safety rules, duties and standards, as well as their conscious indifference about the safety of their premises, resulted in injuries and damages to Edward Danley.[57]

## AMOUNT OF DAMAGES

102.    The injuries and damages sustained by the Danleys are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases, for which the Danleys should be awarded a judgment against Defendants in an amount to fully and fairly compensate them for each and every element of damages sustained.

## DEMAND FOR JURY TRIAL

103.    The Danleys demand a jury trial for all issues of fact presented by this action.

## RESERVATIONS OF ADDITIONAL CLAIMS

104.    The Danleys reserve the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

---

[55] *Arrow Int'l v. Sparks*, 81 Ark. App. 42, 98 S.W.3d 48 (2003).

[56] AMI Civ. 2218 (2015).

[57] *BMW of N. Am. v. Gore*, 517 U.S. 559, 577, 116 S. Ct. 1589, 1599 (1996) ("infliction of economic injury ... can warrant a substantial penalty").

17

WHEREFORE, premises considered, the Danleys pray that *Summons* be issued for each Defendant and that following a jury trial, they be awarded a judgment against the Defendants in an amount that will fully compensate them for all elements of damages sustained, and in an amount in excess of that required for federal court jurisdiction in diversity of citizenship cases; that they recover punitive damages and attorneys' fees, costs expended, and have and receive all other proper relief to which they may be entitled in the premises.

Respectfully Submitted,

Don P. Chaney, AR BIN 78027
Nathan Price Chaney, AR BIN 2004109
S. Taylor Chaney, AR BIN 2010011
CHANEY LAW FIRM, P.A.
P.O. Box 1405
Arkadelphia, AR 71923
Phone:    870-246-0600
Facsimile: 866-734-0971

David Baria, Esq., MS Bar No. 8646
Baria-Williamson, PLLC
544 Main Street
Bay St. Louis, MS 39520
Phone:    228-270-0001
Facsimile: 228-466-9233

Robert C. Williamson, MS Bar No. 7286
Baria-Williamson, PLLC
4316 Old Canton Road, Suite 100A
Jackson, MS 39211
Phone:    601-948-6005
Facsimile: 601-948-0306

*Attorneys for Plaintiffs*

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
## 2ND CIVIL DIVISION

**EDWARD A. DANLEY, and**                                                           **PLAINTIFFS**
**RENA DANLEY**

**v.**                                            **35CV-15-332**

**MONDI BAGS USA, LLC,**                                                          **DEFENDANTS**
**GRAPHIC PACKAGING INTERNATIONAL, INC.,**
**DELTA NATURAL KRAFT, LLC, and**
**JOHN DOES 1-5**

---

## PLAINTIFF'S REQUESTS FOR ADMISSIONS
## PROPOUNDED TO SEPARATE DEFENDANT, DELTA NATURAL KRAFT, LLC

---

Comes now the Plaintiffs, Edward A. Danley and Rena Danley, and propounds the

following requests for admissions of fact to the Separate Defendant, Delta Natural Kraft, LLC

("Delta Natural Kraft"), to be answered within 45 days from service and in the manner required

by law, and verified under oath, by Delta Natural Kraft specifically admitting or denying the

following facts. Delta Natural Kraft is hereby further advised that a failure to specifically answer

any Request for Admission or an evasive answer to any Request for Admission shall be taken as

an admission of the truth of such requests. A true and correct copy of these Requests for

Admissions is being delivered to the Clerk of this Court for filing as a permanent court record

therein. The facts that you are requested to admit or deny are as follows:

**REQUEST FOR ADMISSION 1:**  Admit this Court has jurisdiction over the parties to

this action.

**REQUEST FOR ADMISSION 2:**  Admit this Court has jurisdiction over the subject

matter of this action.

**REQUEST FOR ADMISSION 3:**  Admit venue is proper in this Court for this action.

**REQUEST FOR ADMISSION 4:**   Admit process and service of process upon Delta Natural Kraft is sufficient for this action.

**REQUEST FOR ADMISSION 5:**   Admit Plaintiffs' *Complaint* has stated facts upon which relief can be granted.

**REQUEST FOR ADMISSION 6:**   Admit that there are no other parties who are required to be joined as a party to this action.

**REQUEST FOR ADMISSION 7:**   Admit Delta Natural Kraft was at fault in causing the fall on Defendants' premises as described in the *Complaint* filed herein that occurred on July 11, 2012, and which is the subject of this action (hereinafter referred to as "fall" and "premises").

**REQUEST FOR ADMISSION 8:**   Admit that the Plaintiff was not at fault in causing the fall that is the subject of this action.

**REQUEST FOR ADMISSION 9:**   Admit that no third party contributed to or was at fault in causing the fall that is the subject of this action.

**REQUEST FOR ADMISSION 10:** Admit that Delta Natural Kraft owned an interest in the premises on the date of the fall.

**REQUEST FOR ADMISSION 11:** Admit that Delta Natural Kraft had a right of control of the premises on the date of the fall.

**REQUEST FOR ADMISSION 12:** Admit that at the time of the fall that is the basis of this lawsuit, the Plaintiff was an "invitee" on Defendant's premises as that term is known in the law relative to someone using another's premises from the property owner's or operator's express or implied invitation to use the premises.

**REQUEST FOR ADMISSION 13:** Admit that the Delta Natural Kraft actually knew of the existence of the unguarded front (north) side of the platform from which Plaintiff fell

2

(hereinafter referred to as the "platform"), before the Plaintiff's fall from the platform that is the basis of this lawsuit.

**REQUEST FOR ADMISSION 14:** Admit that Delta Natural Kraft actually knew of the existence of Tall Oil Soap residue that coated the platform before the fall that is the basis of this lawsuit.

**REQUEST FOR ADMISSION 15:** Admit that the unguarded north side of the platform located on Defendant's premises was a dangerous condition.

**REQUEST FOR ADMISSION 16:** Admit that the Tall Oil Soap residue coating the ground, stairs, and platform located on the Defendant's premises was a dangerous condition.

**REQUEST FOR ADMISSION 17:** Admit that Delta Natural Kraft directed the Plaintiff, Edward A. Danley, to park his truck and tanker trailer near the slippery, unguarded north side of the platform.

**REQUEST FOR ADMISSION 18:** Admit that after the fall Delta Natural Kraft caused the Tall Oil Soap residue to be removed from the platform.

**REQUEST FOR ADMISSION 19:** Admit that sometime before and on July 11, 2012, Delta Natural Kraft allowed the front (north) side of the platform to remain unguarded.

**REQUEST FOR ADMISSION 20:** Admit that sometime before or on July 11, 2012, Delta Natural Kraft allowed the platform to become coated in Tall Oil Soap.

**REQUEST FOR ADMISSION 21:** Admit that on July 11, 2012, before the fall, Delta Natural Kraft failed to warn the Plaintiff Edward A. Danley about the slippery, unguarded north side of the platform.

3

**REQUEST FOR ADMISSION 22:** Admit that on July 11, 2012, that the Plaintiff's fall on Delta Natural Kraft's premises caused the Plaintiff Edward A. Danley to suffer serious and permanent bodily injuries to his neck, back, and other parts of his body.

**REQUEST FOR ADMISSION 23:** Admit that Delta Natural Kraft had a duty to follow safety rules and standards to maintain their loading platform and premises in a reasonably safe condition.

**REQUEST FOR ADMISSION 24:** Admit that Delta Natural Kraft had a duty to follow safety rules and standards to protect the Plaintiff Edward A. Danley from foreseeable workplace dangers about which Delta Natural Kraft knew or should have known about.

**REQUEST FOR ADMISSION 25:** Admit that Delta Natural Kraft knew or should have known that a person losing their footing on surfaces covered with Tall Oil Soap was a foreseeable risk.

**REQUEST FOR ADMISSION 26:** Admit that Delta Natural Kraft knew or should have known that falls from the loading platform from which Plaintiff Edward A. Danley fell were a foreseeable risk.

**REQUEST FOR ADMISSION 27:** Admit that Delta Natural Kraft was required to provide and maintain clean and dry surfaces on the platform and on the passageways and stairs used to access the platform.

**REQUEST FOR ADMISSION 28:** Admit that Delta Natural Kraft was required to have a guard rail or other suitable protections on the front (north) side of the platform.

**REQUEST FOR ADMISSION 29:** Admit that Delta Natural Kraft was required to follow safety rules and standards to protect Plaintiff Edward A. Danley from dangers he might discover.

4

**REQUEST FOR ADMISSION 30:** Admit that Delta Natural Kraft was required to follow safety rules and standards to anticipate dangerous conditions that would cause physical harm, regardless if such dangerous conditions were open and obvious.

**REQUEST FOR ADMISSION 31:** Admit that Delta Natural Kraft was required to follow safety rules and standards to inspect the loading facility and premises to discover the actual condition of the premises for the safety of the Plaintiff Edward A. Danley and others.

**REQUEST FOR ADMISSION 32:** Admit that Delta Natural Kraft was required to follow safety rules and standards to institute a training program for employees to teach them how to inspect the loading facility and premises to discover the actual condition of the premises for the safety of the Plaintiff Edward A. Danley and others.

**REQUEST FOR ADMISSION 33:** Admit that Delta Natural Kraft was required to follow safety rules and standards to provide training to employees to teach them how to inspect the loading facility and/or premises to discover the actual condition of the premises for the safety of the Plaintiff Edward A. Danley and others.

**REQUEST FOR ADMISSION 34:** Admit that Delta Natural Kraft was required to follow safety rules and standards to warn of dangerous conditions discovered following an inspection of the loading facility and premises.

**REQUEST FOR ADMISSION 35:** Admit that Delta Natural Kraft was required to follow safety rules and standards to institute a training program for employees to teach them how to repair the premises after discovering a defective condition.

**REQUEST FOR ADMISSION 36:** Admit that Delta Natural Kraft was required to follow safety rules and standards and provide training to employees to teach them how to repair the premises after discovering the defective condition.

5

**REQUEST FOR ADMISSION 37:** Admit Delta Natural Kraft was required to follow safety rules and standards to use ordinary care for the safety of the Plaintiff Edward A. Danley and others.

**REQUEST FOR ADMISSION 38:** Admit that Delta Natural Kraft was required to hire only employees with the skills and aptitude needed to follow the safety rules and standards listed above and to supervise their performance to ensure the employees complied with the safety rules and standards listed above.

**REQUEST FOR ADMISSION 39:** Admit that the negligence of Delta Natural Kraft was a proximate cause of the Plaintiff Edward A. Danley's injuries.

**REQUEST FOR ADMISSION 40:** Admit that if you do not respond to these Requests for Admissions, it is because you are liable for all of the Plaintiffs' injuries and damages, and because you are completely at fault without any defense to the Plaintiffs' *Complaint* filed herein.

Dated this 29th day of September, 2015.

Respectfully submitted,

Don P. Chaney, AR BIN 78027
Nathan P. Chaney, AR BIN 2004109
S. Taylor Chaney, AR BIN 2010011
P.O. Box 1405
Arkadelphia, AR 71923
Email: don@chaneylaw.com
Telephone: 870-246-0600
Telefax: 870-246-0602

By: _____
Don P. Chaney, AR BIN 78027

6

And

Robert C. Williamson
David Baria
Baria-Williamson, PLLC
4316 Old Canton Road, Suite 100A
Jackson, MS 39211
Email: rcw@barialaw.com
Telephone: 601-948-6005
Telefax: 601-948-0306

Attorneys for Plaintiffs



7014 1820 0002 0926 9722



UNITED STATES POSTAGE
$013.48⁰
PITNEY BOWES
02 1P
0001055158  SEP 30 2015
MAILED FROM ZIP CODE 71923

Chaney Law Firm
526 Main Street
Suite 204
P.O. Box 1405
Arkadelphia, AR 71923

Corporation Service Company
Registered Agent for Service of Process
for Delta Natural Kraft, LLC
300 Spring Building, Suite 900
300 South Spring Street
Little Rock, Arkansas  72201

# CHANEY LAW FIRM, P.A.

**P.O. Box 1405**
**526 Main Street, Suite 204**
**Arkadelphia, Arkansas 71923**
**Phone: (870) 246-0600**

Donald Price Chaney, Jr.
Nathan Price Chaney[†‡]
Hilary Martin Chaney
Sterling Taylor Chaney

**www.chaneylaw.com**

Facsimile: (866) 734-0971
Writer's Email: Don@chaneylaw.com
[†] Registered Patent Attorney
[‡] Also licensed in Texas

September 29, 2015

## CERTIFIED MAIL NO.: 7014 1820 0002 0927 0445

Corporation Service Company
Registered Agent for Service of Process
For Mondi Bags USA, LLC
300 Spring Building, Suite 900
300 South Spring Street
Little Rock, Arkansas  72201

> RE:  *Edward A. Danley and Rena Danley v. Mondi Bags USA, LLC;*
> *Graphic Packaging International, Inc.; Delta Natural Kraft, LLC;*
> *and John Does 1-5*
> Jefferson County Circuit No.: 35CV-2015-332

Dear Corporation Service Company:

As an attorney for the Plaintiffs in the above action, I am serving you as the registered agent for service of process for Mondi Bags USA, LLC, with (1) the *Complaint* filed in this action; (2) a *Summons* explaining what actions must be taken; and (3) a set of *Requests for Admissions* to be answered.

Service of process is being completed upon you pursuant to Rule 4 of the Arkansas Rules of Civil Procedure.

The company for which you have accepted service of process has thirty (30) days from your receipt hereof in which to answer or otherwise plead to the allegations of the Complaint and (45) days to answer the Request for Admissions. If it fails to do so, the Court may grant the Plaintiffs all relief requested in the Complaint without further notice to you or the company for which you have accepted service of process. I would urge you to immediately notify the company for which you have accepted service to consult its corporate attorney, and to notify its insurance carrier at once about this service of legal process upon you to commence this lawsuit.

**Letter to Corporation Service Company**
**September 29, 2015**
**Page 2 of 2**

Sincerely yours,

Don P. Chaney

DPC/kmm
Enclosures

cc:     Mr. Robert C. Williamson
        Mr. David Baria

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS**
**CIVIL DIVISION**

2nd

EDWARD A. DANLEY and                                                          **PLAINTIFF**
RENA DANLEY

v.                                          35CV-2015 *332*

MONDI BAGS USA, LLC;                                                         **DEFENDANT**
GRAPHIC PACKAGING INTERNATIONAL, INC.;
DELTA NATURAL KRAFT, LLC; and
JOHN DOES 1-5

---

## SUMMONS

---

The State of Arkansas to Defendant:
Mondi Bags USA, LLC
C/O Corporation Service Company,
As Registered Agent for Service of Process
300 Spring Building, Suite 900
300 S. Spring Street
Little Rock, AR 72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are: Don P. Chaney, CHANEY LAW FIRM, P.A., P.O. Box 1405, Arkadelphia, Arkansas 71923.

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**LAFAYETTE WOODS, SR., Circuit Clerk**

CLERK OF COURT

Address of Clerk's Office:
Jefferson Circuit Court
Jefferson County Circuit C
101 E Barraque St.
Pine Bluff, Arkansas 7160

[Signature of Clerk or Deputy Clerk]

Date: _____ **JUL 1 0 2015** _____

### PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____
_____ [place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____
_____ after he/she refused to receive it when I offered it to him/her; or

1

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at ____ _____ [address] with _____ [name], a person at least 14 years of age who resides there, on _____ [date]; or

☐ I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ _____ [name of defendant] on _____ [date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $_____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____           SHERIFF OF _____ COUNTY, ARKANSAS

By: _____           _____
       [Signature of server]                                    [Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____   By:   _____
                                                                            [Signature of server]
Address: _____

_____                 _____
                                                                            [Printed name]
Phone: _____

**Subscribed and sworn to before me this date:**

_____.

_____
Notary Public
My commission expires: _____.

| **Additional information regarding service or attempted service:** |
| Complaint attached _____ |
| _____ |
| _____ |

2

IN THE CIRCUIT COURT OF JEFFERSON, COUNTY, ARKANSAS
CIVIL DIVISION
2nd

EDWARD A. DANLEY and                                                    PLAINTIFFS
RENA DANLEY

v.                                    35CV - 2015 - 332

MONDI BAGS USA, LLC;                                                    DEFENDANTS
GRAPHIC PACKAGING INTERNATIONAL, INC.;
DELTA NATURAL KRAFT, LLC; and
JOHN DOES 1-5

---

## COMPLAINT

---

COME NOW the Plaintiffs, Edward A. Danley and Rena Danley (collectively "the

Danleys") and for their cause of action against Delta National Kraft, LLC ("Delta Kraft"),

Graphic Packaging International, Inc. ("GPI"), and Mondi Bags USA, LLC ("Mondi USA"), and

state:

### THE PARTIES

1.      The Danleys are adult residents of George County, Mississippi.

2.      Delta Kraft is an Arkansas Limited Liability Company whose registered agent for

service of process is Corporation Service Company, 300 Spring Building, Suite 900, 300 S.

Spring Street, Little Rock, AR 72201.

3.      Mondi USA, formerly Graphic Flexible Packaging, LLC, is a Delaware

Corporation qualified to do business in Arkansas whose registered agent for service of process is

Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring St, Little Rock,

AR 72201.

4.      GPI is a Delaware Corporation qualified to do business in Arkansas whose

registered agent for service of process is The Prentice-Hall Corporation System, Arkansas, 300

Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201.

FILED IN MY OFFICE AND SUMM
ISSUED AT 10:18 O'CLOCK 2
JUL 1 0 2015        DA
LAFAYETTE WOODS, SR., CLERK

5.      The fictitious John Doe Defendants, whether singular or plural, are those entity or entities, or individual or individuals, who are or may be liable to the Danleys for the wrongful conduct describedin this Complaint , or who may be responsible for the damages sustained by the Danleys as described in this Complaint..

6.      The Danleys aver the identities of these fictitious party defendants are unknown to them  or if their names are known to the Danleys, their identities as proper defendants are not known to the Danleys  and that their true names will be substituted by amendment when ascertained.

7.      Plaintiff's attorney's affidavit about the John Doe Defendants is included below.

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction under the Arkansas Constitution.

9.      Venue is proper as a substantial part of the events or omissions giving rise to the claim occurred in Jefferson County, Arkansas.[1]

10.      Personal jurisdiction over each of the Defendants is proper under Arkansas Code § 16-4101 because each of the Defendants is qualified to do business or doing business in Arkansas and the events giving rise to this Complaint arose from their respective business activities within Arkansas.

## DEFENDANTS' RELATIONSHIPS

11.      GPI is a Fortune 1000 company who provides packaging for food, beverages and other consumer products companies.

12.      GPI is the wholly owned subsidiary of Graphic Packaging Corporation ("GPC"), which is the wholly owned subsidiary of Graphic Packaging Holding Company ("GPHC"), a

---

[1] Ark. Code Ann. § 16-55-213(a)(1).

publicly traded company, neither of which conduct significant business or have independent assets or operations. [2]

13.     On December 8, 2011, GPI combined its multi-wall bag and specialty plastics packaging businesses with the Kraft paper and multi-wall bag businesses of Delta Kraft and Mid-America Packaging, LLC (collectively "DNK"), both wholly owned subsidiaries of Capital Five Investments, LLC ("CVI").[3]

14.     Under the terms of the transaction, GPI formed a new limited liability company, Graphic Flexible Packaging, LLC ("GFP") and contributed its ownership interests in multi-wall bag and specialty plastics packaging subsidiaries to it. [4]

15.     CVI concurrently contributed its ownership interests in DNK to GFP.[5]

16.     Following the combination, GPI owned 87% of GFP and exercised complete control over its day-to-day operations, making it effectively GPI's instrumentality.[6]

17.     On information and belief, GPI's control of GFP extended to the day-to-day management and operations of a Kraft paper mill at 1701 Jefferson Parkway, Pine Bluff, AR 71602.

18.     Ownership of the real property and mill itself was vested in Delta Kraft, which on information and belief also was subject to GPI's control and a key component of GPI's operation of the mill.

---

[2] Source: auditor's notes and comments to GHPC and its subsidiaries combined audited financial statements, 201 et seq.

[3] Id.

[4] Id.

[5] Id.

[6] Id.

19.     On June 30, 2014, Moni Romeoville, Inc. purchased all of the stock or membership interests in GFP and changed its name to Mondi Bags USA, LLC. [7]

## THE CAUSE OF ACTION

20.     In converting pulp wood to paper, the Pine Bluff paper mill produced a by-product called Crude Tall Oil or Tall Oil Soap.

21.     Defendants shipped Tall Oil Soap by truck and rail to other plants for refinement into substances used in consumer, industrial, and construction products.

22.     Defendants required "top loading" of the truck tankers and rail tanker cars.

23.     Tall Oil Soap is a dark viscous liquid, both smelly and slippery, and was frequently spilled during the loading of truck and rail tankers at the mill. .

24.     The Defendants required truckers to load their tanker trailers from a facility used to load rail tanker cars, a four-sided platform 15- 20 feet above the ground

25.     Stairs from the ground below, opened on the rear (south) side of the rail car loading platform.

26.     Guard rails closed each end (east and west) of the rail car loading platform.

27.     A hose connecting the storage tank of Tall Oil Soap to the tanker trailers or rail tanker cars on the north side of the platform.

28.     The front (north) side of the rail tanker car loading platform where the hose was located was an unprotected opening.

29.     Defendants required truckers to use the rail car tanker loading platform though it knew there were safer alternative facilities, means and methods available.

---

[7] K & L Gates December 22, 2014 Letter to Akransas Department of Environmental Quality.

30.     Defendants required the truck tanker loading operations to continue at the facility even when the surface of the platform, the stairs to the platform, and the ground around the platform were contaminated with Tall Oil Soap.

31.     On July 11, 2012, Edward Danley parked his truck and tanker trailer as directed on the north side of the rail car loading platform to load Tall Oil Soap into his tanker trailer for delivery to Graphic Packaging's plant in Monroe, Louisiana.

32.     Edward Danley had to park at an angle to the platform rather than exactly parallel because a rail tanker car was in the way.

33.     After parking, Edward Danley exited his truck, climbed up onto the tanker trailer, opened the dome hatch, climbed down the tanker trailer, and walked up the stairs to the platform.

34.     The ground, the stairs, and the platform were covered with Tall Oil Soap.

35.     The bottoms of Edward Danley's work boots were coated with Tall Oil Soap, and he was forced, as a practical matter, to encounter a known or obvious risk to perform his job.[8]

36.     Once on the platform, Edward Danley pulled down the hose harness and placed it in the open hatch.

37.     As he turned around to go back down the stairs, Edward Danley's feet slipped out from under him, and he fell backwards off the unguarded front (north) side of the platform 15-20 feet to the ground.

38.     Edward Danley landed on his neck, back, shoulder, ribs and other body parts.

39.     Edward Danley was transported to the Jefferson Regional Medical Center emergency room for evaluation and treatment.

---

[8] *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990).

*O*

40.    The impact from the fall (hereinafter referred to as "Edward Danley's fall") caused the bodily injuries and damages to Edward Danley described below.

41.    At all times, Edward Danley was a business invitee of Defendants.

## DUTIES OWED BY DEFENDANTS

42.    Defendants were required to follow safety rules and standards to maintain their loading facility and premises in a reasonably safe condition to prevent Edward Danley and others from foreseeable workplace dangers, both before and at the time of the Edward Danley's fall.[9]

43.    Defendants were required to follow safety rules and standards to protect Edward Danley from foreseeable workplace dangers of which Defendants knew or should have known about for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[10]

44.    Defendants knew or should have known that a person loosing their footing on surfaces covered with Tall Oil was a foreseeable risk.

45.    Defendants knew or should have known that falls from the rail truck platform was a foreseeable risk.

46.    Defendants were required to provide and maintain clean and dry surfaces on the platform and on the passageways and stairs used to access the platform for the safety of Edward Danley and others both before and at the time of Edward Danley's fall. [11]

---

[9] AMI Civ. 1104 (2015); 29 C.F.R. § 1910.176(c); *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[10] *DeVazier v. Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974); 29 C.F.R. § 1910.176(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[11] 29 C.F.R. 19.10.23.

6

47.     Defendants were required to have a guard rail or other suitable protections on the front (north) side of the platform for the safety of Edward Danley and others, both before and at the time of Edward Danley's fall.[12]

48.     Defendants were required to follow safety rules and standards to protect Edward Danley from dangers he might discover, for his safety and others, both before and at the time of Edward Danley's fall.[13]

49.     Defendants were required to follow safety rules and standards to anticipate dangerous conditions that would cause physical harm, regardless if such dangerous conditions were open and obvious, for the safety of Edward Danley and others, both before and at the time of Edward Danley's fall. [14]

50.     Defendants were required to follow safety rules and standards to inspect the loading facility and premises to discover the actual condition of the premises for the safety of Edward Danley and others, both before and at the time of Edward Danley's fall. [15]

51.     Defendants were required to follow safety rules and standards to institute a training program for employees to teach them how to inspect the loading facility and premises to discover the actual condition of the premises for the safety of Edward Danley and others, both before and at the time of Edward Danley's fall.. [16]

52.     Defendants were required to follow safety rules and standards to provide training to employees to teach them how to inspect the loading facility and/or premises to discover the

---

[12] 29 C.F.R. 1910.23(a)(1)(b)(3)(c)(1)(3)(e)(3)(v)(c).

[13] *DeVazier v. Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974).

[14] *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Kuykendall v. Newgent*, 255 Ark. 945, 504 S.W.2d 344 (1974); 29 C.F.R. § 1910.1769(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[15] *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Restatement Second of Torts* § 343 cmt b (1965); 29 C.F.R. § 1910.176(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[16] 29 C.F.R. § 1910.9(b).

7

actual condition of the premises for the safety of Edward Danley and others, both before and at the time of Edward Danley's fall. .[17]

53.     Defendants were required to follow safety rules and standards to warn of dangerous conditions discovered following inspection of the loading facility and premises for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[18]

54.     Defendants were required to follow safety rules and standards to institute a training program for employees to teach them how to warn of dangerous conditions discovered following inspection of the loading facility and/or premises for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[19]

55.     Defendants were required to follow safety rules and standards to provide training to employees to teach them how to warn of dangerous conditions discovered following inspection of the loading facility and premises for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[20]

56.     Defendants were required to follow safety rules and standards to repair the premises after discovering any defective conditions for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[21]

57.     Defendants were required to follow safety rules and standards to institute a training program for employees to teach them how to repair the premises after discovering any

---

[17] 29 C.F.R. § 1910.9(b).

[18] *Kelley v. National Union Fire Ins. Co.*, 327 Ark. 329, 937 S.W.2d 660 (1997); *Jenkins v. Hestand's Grocery*, 320 Ark. 485, 898 S.W.2d 30 (1995); *Restatement Second of Torts* § 343 cmt b (1965).

[19] 29 C.F.R. § 1910.9(b).

[20] 29 C.F.R. § 1910.9(b).

[21] *Trent v. KMS, Inc.*, 55 Ark. App. 355, 935 S.W.2d 6 (1996); *Restatement Second of Torts* § 343 cmt d (1965).

8

defective condition for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[22]

58.    Defendants were required to follow safety rules and standards to provide training to employees to teach them how to repair the premises after discovering the defective condition for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[23]

59.    Defendants were required to follow safety rules and standards to use ordinary care for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[24]

60.    Defendants were required to hire only employees with the skills and aptitude needed to follow the safety rules and standards listed above and to supervise their performance to ensure the employees complied with the safety rules listed above.

61.    Defendants were not allowed to needlessly endanger Edward Danley or anyone else by violating the safety rules and standards listed above.

## DUTIES VIOLATED BY DEFENDANTS

62.    At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to maintain their loading facility and/or premises in a reasonably safe condition to prevent Edward Danley and others from foreseeable workplace dangers.[25]

---

[22] 29 C.F.R. § 1910.9(b).

[23] 29 C.F.R. § 1910.9(b).

[24] AMI Civ. 305 (2015).

[25] AMI Civ. 1104 (2015); 29 C.F.R. § 1910.176(c); *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

9

63.    At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to protect Edward Danley from foreseeable workplace dangers of which Defendants knew or should have known about for the safety of Edward Danley and others.[26]

64.    At the time of Edward Danley's fall, Defendants violated the duty to adopt and follow safety rules and standards to protect Edward Danley of the foresseable risk of losing his balance from Tall Oil.

65.    At the time of Edward Danley's fall, Defendants violated the duty to adopt and follow safety rules and standards to protect Edward Danley from the foresseable risk of falling from the platform.

66.    At the time of Edward Danley's fall, Defendants violated the duty to provide and maintain clean and dry surfaces on the platform and on the passageways and stairs used to access the platform for the safety of Edward Danley.

67.    At the time of Edward Danley's fall, Defendants violated the duty to have a guard rail on the front (north) side of the platform or have other safeguards from falls for the safety of Edward Danley and others.[27]

68.    At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to protect Edward Danley from losing his footing on dangers he might discover, for his safety and others.[28]

69.    At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to anticipate dangerous conditions that would cause physical harm,

---

[26] *DeVazier v. Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974); 29 C.F.R. § 1910.176(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[27] 29 C.F.R. 1910.23(a)(1)(b)(3)(c)(1)(3)(e)(3)(v)(c).

[28] *DeVazier v. Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974).

regardless if such dangerous conditions were open and obvious, for the safety of Edward Danley and others.[29]

70.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to inspect the loading facility and premises to discover the actual condition of the premises for the safety of Edward Danley and others.[30]

71.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to institute a training program for employees to teach them how to inspect the loading facility and/or premises to discover the actual condition of the premises for the safety of Edward Danley and others.[31]

72.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to provide training to employees to teach them how to inspect the loading facility and

73.     premises to discover the actual condition of the premises for the safety of Edward Danley and others.[32]

74.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to warn of dangerous conditions discovered following inspection of the loading facility and/or premises for the safety of Edward Danley and others, both before and at the time of the Edward Danley's fall.[33]

---

[29] *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Kuykendall v. Newgent*, 255 Ark. 945, 504 S.W.2d 344 (1974); 29 C.F.R. § 1910.1769(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[30] *Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990); *Restatement Second of Torts* § 343 cmt b (1965); 29 C.F.R. § 1910.176(c); *Madison Foods, Inc. v. Marshall*, 630 F.2d 628 (8th Cir. 1980).

[31] 29 C.F.R. § 1910.9(b).

[32] 29 C.F.R. § 1910.9(b).

[33] *Kelley v. National Union Fire Ins. Co.*, 327 Ark. 329, 937 S.W.2d 660 (1997); *Jenkins v. Hestand's Grocery*, 320 Ark. 485, 898 S.W.2d 30 (1995); *Restatement Second of Torts* § 343 cmt b (1965).

75.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to institute a training program for employees to teach them how to warn of dangerous conditions discovered following inspection of the loading facility and premises for the safety of Edward Danley and others.[34]

76.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to provide training to employees to teach them how to warn of dangerous conditions discovered following inspection of the loading facility and premises for the safety of Edward Danley and others.[35]

77.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to repair the premises after discovering the defective condition for the safety of Edward Danley and others.[36]

78.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to institute a training program for employees to teach them how to repair the premises after discovering the defective condition for the safety of Edward Danley and others.[37]

79.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to provide training to employees to teach them how to repair the premises after discovering the defective condition for the safety of Edward Danley and others.[38]

80.     At the time of Edward Danley's fall, Defendants violated the duty to follow safety rules and standards to use ordinary care for the safety of Edward Danley and others.[39]

---

[34] 29 C.F.R. § 1910.9(b).

[35] 29 C.F.R. § 1910.9(b).

[36] *Trent v. KMS, Inc.*, 55 Ark. App. 355, 935 S.W.2d 6 (1996); *Restatement Second of Torts* § 343 cmt d (1965).

[37] 29 C.F.R. § 1910.9(b).

[38] 29 C.F.R. § 1910.9(b).

[39] AMI Civ. 305 (2015).

12

81.     At the time of Edward Danley's fall,  Defendants violated the duty to hire only

employees with the skills and aptitude needed to follow the safety rules and standards listed

above and to supervise their performance to ensure the employees complied with the safety rules

listed above . At the time of the Edward Danley's fall, Defendants needlessly endangered

Edward Danley and others by violating the safety rules and standards listed above.

### CAUSATION OF THE DANLEY'S INJURIES AND DAMAGES

82.     The injuries and damages sustained by the Danleys, more particularly described

below, were produced in a natural and continuous sequence from Defendants' violation of one or

more of the above described safety rules, duties, and standards.[40]

83.     The injuries and damages sustained by the Danleys were a probable consequence

from Defendants' violation of one or more of the above described safety rules, duties, and

standards.[41]

84.      Workplace premises liability injuries are a foreseeable risk of harm, as

approximately 25% of reported workplace injuries each result from the workplace being

maintained in an unreasonably safe condition.

85.     Hundreds of thousands of workers fall each year, and hundreds of workers are

killed

86.     Fractured bones result from approximately 5% of these falls.

87.     Falls are the most common cause of lost work time.

88.     Approximately 22% of falls cause over 31 days of missed work.

89.     Approximately 8 million emergency room visits are made for slips, trips and falls

an annual basis.

---

[40] AMI Civ. 501 (2015).

[41] *Ouachita Wilderness Inst. v. Mergen*, 329 Ark. 405, 415, 947 S.W.2d 780, 785 (1997).

90. Defendants should have foreseen and anticipated that a violation of one or more of the above described safety rules, duties, and standards would constitute an appreciable risk of harm to others, including the Danleys.[42]

91. If the Defendants had not violated one or more of the above described safety rules, duties, and standards, then the Danleys' injuries and damages would not have occurred.[43]

## COMPENSATORY DAMAGES SUSTAINED BY THE DANLEYS

92. The injuries and damages sustained by Edward Danley because of Defendants' violation of one or more of the above described safety rules, duties, and standards, include but are not limited to:

A. Serious and permanent bodily injuries to Edward Danley's neck, back, and other parts of his body, which is a life-altering event causing Edward Danley to lose the ability to enjoy a normal quality of life, and depriving him of the right to live his life in comfort and ease without added inconvenience or diminution of physical vigor;[44]

B. Aggravation of a condition(s) already then existing at the time of Edward Danley's fall that predisposed Edward Danley to injury to a greater extent than another person;[45]

C. Medical expenses incurred in the past and reasonably expected to be incurred, and transportation expenses to obtain such medical treatment;[46]

---

[42] *State Farm Mut. Auto. Ins. Co. v. Pharr*, 305 Ark. 459, 464, 808 S.W.2d 769, 771-72 (1991) (following *Machine, Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980)).

[43] AMI Civ. 501 (2015).

[44] AMI Civ. 2202 (2015); *Sanson v. Allinson*, 2014 Ark. App. 619, 447 S.W.3d 151; *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2007); *Fayetteville Diagnostic Clinic v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001); *Wheeler v. Bennett*, 312 Ark. 411, 849 S.W.2d 952 (1993); *Adkins v. Kelley*, 244 Ark. 199, 424 S.W.2d 373 (1968) (quoting Henry Woods, *Earnings and Earning Capacity as Elements of Danger in Personal Injury Litigation*, 18 Ark. L. Rev. 304, 305 (1964)).

[45] AMI Civ. 2203 (2015); *Sanson v. Allinson*, 2014 Ark. App. 619, 447 S.W.3d 151; *Primm v. U.S. Fid. & Guar. Ins. Corp.*, 324 Ark. 409, 922 S.W.2d 319 (1996); *Owen v. Dix*, 210 Ark. 562, 196 S.W. 319 (1946); *see also Kudabeck v. Kroger Co.*, 338 F.3d 856 (8th Cir. 2003); *Tedder v. Am. Railcar Indus.*, 739 F.3d 1104 (8th Cir. 2014).

[46] AMI Civ. 2204 (2015); *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2007); *Fayetteville Diagnostic Clinic v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001); *Wal-Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991); *Honeycutt v. Walden*,

D.    Physical pain and suffering experienced in the past and reasonably expected to be experienced;[47]

E.    Loss of income in the past, including but not limited to hiring a substitute driver,[48] and loss of income reasonably expected to be experienced;[49]

F.    Loss of earning capacity due to permanent physical impairment from the injuries caused by Edward Danley's fall;[50]

G.    Mental anguish experienced in the past and reasonably expected to be experienced, which includes but is not limited to Edward Danley's loss of quality of life due to permanent injuries causing chronic pain that limits his activities;[51]

H.    The reasonable expense of any necessary help in Edward Danley's home in the past, and reasonably certain to be required because of his injuries injuries.[52]

---

294 Ark. 440, 743 S.W.2d 809 (1988); *Matthews v. Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983); *Williams v. Gates*, 275 Ark. 381, 630 S.W.3d 34 (1982); *Haney v. Noble*, 250 Ark. 557, 466 S.W.2d 467 (1971) (citing *Belford v. Humphrey*, 244 Ark. 211, 424 S.W.2d 526 (1968)).

[47] AMI Civ. 2205 (2015); *Fayetteville Diagnostic Clinic v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001); *RLI Ins. Co. v. Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991); *Bill Davis Trucking, Inc. v. Prysock*, 301 Ark. 387, 784 S.W.2d 755 (1990); *Handy Dan Home Improv. Center, Inc. v. Peters*, 286 Ark. 102, 689 S.W.2d 551 (1985).

[48] AMI Civ. 3d 2206 (2013); *Swenson v. Hampton*, 244 Ark. 104, 424 S.W.2d 165 (1968); *Cates v. Brown*, 278 Ark. 242, 645 S.W.2d 658 (1983); *Sharp v. Great Southern Coaches, Inc.*, 256 Ark. 773, 510 S.W.2d 266 (1974); *John Hancock Mut. Life Ins. Co. v. Magers*, 199 Ark. 104, 132 S.W.2d 841 (1939); Henry Woods, *Earnings and Earning Capacity as Elements of Danger in Personal Injury Litigation*, 18 Ark. L. Rev. 305, 308-09 (1965).

[49] AMI Civ. 2206 (2015); *Swenson v. Hampton*, 244 Ark. 104, 424 S.W.2d 165 (1968); *Cates v. Brown*, 278 Ark. 242, 645 S.W.2d 658 (1983).

[50] AMI Civ. 2207 (2015); *Sanson v. Allinson*, 2014 Ark. App. 619, 7, 447 S.W.3d 151; *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2007); *Collins v. Hinton*, 327 Ark. 159, 937 S.W.2d 164 (1997); *Gipson v. Garrison*, 308 Ark. 344, 824 S.W.2d 829 (1992); *Bill Davis Trucking, Inc. v. Prysock*, 301 Ark. 387, 784 S.W.2d 755 (1990); *West Union v. Vostatek*, 302 Ark. 219, 788 S.W.2d 952 (1990); *Honeycutt v. Walden*, 294 Ark. 440, 743 S.W.2d 809 (1988); *Haney v. Noble*, 250 Ark. 557, 466 S.W.2d 467 (1971); *Blissett v. Frisby*, 249 Ark. 235, 458 S.W.2d 735 (1970); *Hogan v. Hill*, 229 Ark. 758, 318 S.W.2d 580 (1958); *Britt Trucking Co. v. Ringgold*, 209 Ark. 769, 192 S.W.2d 532 (1946).

[51] AMI Civ. 2205 (2015); *RLI Ins. Co. v. Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991); *Chicago, R.I. & P. Ry. Co. v. Caple*, 207 Ark. 52, 179 S.W.2d 151 (1944); *Scott-Burr Stores Corp. v. Foster*, 197 Ark. 232, 122 S.W.2d 165 (1938); Howard W. Brill, *Law of Damages* § 29 (5th ed. Thompson West 2004).

[52] AMI Civ. 2209 (2015); *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Carr v. Nance*, 2010 Ark. 497, 370 S.W.3d 826; *Jackson v. United States*, 526 F. Supp. 1149 (E.D. Ark. 1981), *aff'd*, 696 F.2d 999 (8th Cir. 1982); *Perkins Oil Co. of Del. v. Fitzgerald*, 197 Ark. 14, 121 S.W.2d 877 (1938).

93.     The separate Plaintiff, Rena Danley, is the spouse of the injured Plaintiff, Edward Danley.

94.     Rena Danley sustained damages for the loss of services, society, companionship, and marriage relationship of her husband.

95.     Rena Danley should be fully and fairly compensated for loss of consortium damages.

96.     Defendants' violation of one or more of the above described safety rules, duties, and standards proximately caused Rena Danley's loss of consortium damages.[53]

## PUNITIVE DAMAGES

97.     Besides the compensatory damages for actual losses and damages sustained by Plaintiffs, the Danleys should also be awarded punitive damages to deter other wrongdoers and to punish the Defendants because their violation of one or more of the above described safety rules, duties and standards were willfull, wanton, and reckless.

98.     Defendants knew or ought to have known, in light of the viscous and slippery nature and properties of Tall Oil Soap, that allowing it to accumulate on the ground, the stairs, and the platform 15-20 feet above the ground would naturally and probably result in injury.[54]

99.     Despite this knowledge, Defendants continued to allow Tall Oil Soap to remain on the ground, the stairs, and the platform 15-20 feet above the ground on Defendants premises, which shows a conscious indifference to the health and safety of Edward Danley and others, and

---

[53] AMI Civ. 2211 (2015); *Mo. Pac. Trans. Co. v. Miller*, 227 Ark. 351, 299 S.W.2d 41 (1957).
[54] *Carr v. Nance*, 2010 Ark. 497, 370 S.W.3d 826 (2010).

a conscious disregard of a known risk of harm to Edward Danley and others from which malice may be inferred.[55]

100. Defendants' lack of effort to repair or clean the Tall Oil Soap from their premises, or have a training program or provide training or to supervise their employees to repair or clean the Tall Oil Soap from their premises, constitutes a reckless disregard of the consequences from which malice may be inferred.[56]

101. Defendants' willful, wanton, and reckless violation of one or more of the above described safety rules, duties and standards, as well as their conscious indifference about the safety of their premises, resulted in injuries and damages to Edward Danley.[57]

## AMOUNT OF DAMAGES

102. The injuries and damages sustained by the Danleys are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases, for which the Danleys should be awarded a judgment against Defendants in an amount to fully and fairly compensate them for each and every element of damages sustained.

## DEMAND FOR JURY TRIAL

103. The Danleys demand a jury trial for all issues of fact presented by this action.

## RESERVATIONS OF ADDITIONAL CLAIMS

104. The Danleys reserve the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

---

[55] *Arrow Int'l v. Sparks*, 81 Ark. App. 42, 98 S.W.3d 48 (2003).

[56] AMI Civ. 2218 (2015).

[57] *BMW of N. Am. v. Gore*, 517 U.S. 559, 577, 116 S. Ct. 1589, 1599 (1996) ("infliction of economic injury ... can warrant a substantial penalty").

WHEREFORE, premises considered, the Danleys pray that *Summons* be issued for each

Defendant and that following a jury trial, they be awarded a judgment against the Defendants in

an amount that will fully compensate them for all elements of damages sustained, and in an

amount in excess of that required for federal court jurisdiction in diversity of citizenship cases;

that they recover punitive damages and attorneys' fees, costs expended, and have and receive all

other proper relief to which they may be entitled in the premises.

Respectfully Submitted,

Don P. Chaney, AR BIN 78027
Nathan Price Chaney, AR BIN 2004109
S. Taylor Chaney, AR BIN 2010011
CHANEY LAW FIRM, P.A.
P.O. Box 1405
Arkadelphia, AR  71923
Phone:     870-246-0600
Facsimile: 866-734-0971

David Baria, Esq., MS Bar No. 8646
Baria-Williamson, PLLC
544 Main Street
Bay St. Louis, MS 39520
Phone:     228-270-0001
Facsimile: 228-466-9233

Robert C. Williamson, MS Bar No. 7286
Baria-Williamson, PLLC
4316 Old Canton Road, Suite 100A
Jackson, MS 39211
Phone:     601-948-6005
Facsimile: 601-948-0306

*Attorneys for Plaintiffs*

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS**
**2ND CIVIL DIVISION**

**EDWARD A. DANLEY, and**                                                        **PLAINTIFFS**
**RENA DANLEY**

**v.**                                                              **35CV-15-332**

**MONDI BAGS USA, LLC,**                                                        **DEFENDANTS**
**GRAPHIC PACKAGING INTERNATIONAL, INC.,**
**DELTA NATURAL KRAFT, LLC, and**
**JOHN DOES 1-5**

---

**PLAINTIFF'S REQUESTS FOR ADMISSIONS**
**PROPOUNDED TO SEPARATE DEFENDANT, MONDI BAGS USA, LLC**

---

Comes now the Plaintiffs, Edward A. Danley and Rena Danley, and propounds the

following requests for admissions of fact to the Separate Defendant, Mondi Bags USA, LLC

("Mondi Bags"), to be answered within 30 days from service and in the manner required by law,

and verified under oath, by Mondi Bags specifically admitting or denying the following facts.

Mondi Bags is hereby further advised that a failure to specifically answer any Request for

Admission or an evasive answer to any Request for Admission shall be taken as an admission of

the truth of such requests. A true and correct copy of these Requests for Admissions is being

delivered to the Clerk of this Court for filing as a permanent court record therein. The facts that

you are requested to admit or deny are as follows:

**REQUEST FOR ADMISSION 1:** Admit this Court has jurisdiction over the parties to

this action.

**REQUEST FOR ADMISSION 2:** Admit this Court has jurisdiction over the subject

matter of this action.

**REQUEST FOR ADMISSION 3:** Admit venue is proper in this Court for this action.

**REQUEST FOR ADMISSION 4:**   Admit process and service of process upon Mondi Bags is sufficient for this action.

**REQUEST FOR ADMISSION 5:**   Admit Plaintiffs' *Complaint* has stated facts upon which relief can be granted.

**REQUEST FOR ADMISSION 6:**   Admit that there are no other parties who are required to be joined as a party to this action.

**REQUEST FOR ADMISSION 7:**   Admit Mondi Bags was at fault in causing the fall on Defendants' premises as described in the *Complaint* filed herein that occurred on July 11, 2012, and which is the subject of this action (hereinafter referred to as "fall" and "premises").

**REQUEST FOR ADMISSION 8:**   Admit that the Plaintiff was not at fault in causing the the fall that is the subject of this action.

**REQUEST FOR ADMISSION 9:**   Admit that no third party contributed to or was at fault in causing the fall that is the subject of this action.

**REQUEST FOR ADMISSION 10:**   Admit that Mondi Bags owned an interest in the premises on the date of the fall.

**REQUEST FOR ADMISSION 11:** Admit that Mondi Bags had a right of control of the premises on the date of the fall.

**REQUEST FOR ADMISSION 12:** Admit that at the time of the fall that is the basis of this lawsuit, the Plaintiff was an "invitee" on Mondi Bags' premises as that term is known in the law relative to someone using another's premises from the property owner's or operator's express or implied invitation to use the premises.

**REQUEST FOR ADMISSION 13:** Admit that the Mondi Bags actually knew of the existence of the unguarded front (north) side of the platform from which Plaintiff fell (hereinafter

2

referred to as the "platform"), before the Plaintiff's fall from the platform that is the basis of this lawsuit.

**REQUEST FOR ADMISSION 14:** Admit that Mondi Bags actually knew of the existence of Tall Oil Soap residue that coated the platform before the fall that is the basis of this lawsuit.

**REQUEST FOR ADMISSION 15:** Admit that the unguarded north side of the platform located on Defendant's premises was a dangerous condition.

**REQUEST FOR ADMISSION 16:** Admit that the Tall Oil Soap residue coating the ground, stairs, and platform located on the Defendant's premises was a dangerous condition.

**REQUEST FOR ADMISSION 17:** Admit that Mondi Bags directed the Plaintiff, Edward A. Danley, to park his truck with tanker trailer near the slippery, unguarded north side of the platform.

**REQUEST FOR ADMISSION 18:** Admit that after the fall Mondi Bags caused the Tall Oil Soap residue to be removed from the platform.

**REQUEST FOR ADMISSION 19:** Admit that sometime before and on July 11, 2012, Mondi Bags allowed the front (north) side of the platform to remain unguarded.

**REQUEST FOR ADMISSION 20:** Admit that sometime before or on July 11, 2012, Mondi Bags allowed the platform to become coated in Tall Oil Soap.

**REQUEST FOR ADMISSION 21:** Admit that on July 11, 2012, before the fall, Mondi Bags failed to warn the Plaintiff Edward A. Danley about the slippery, unguarded north side of the platform.

3

**REQUEST FOR ADMISSION 22:** Admit that on July 11, 2012, the Plaintiff's fall on Mondi Bag's premises caused the Plaintiff Edward A. Danley to suffer serious and permanent bodily injuries to his neck, back, and other parts of his body.

**REQUEST FOR ADMISSION 23:** Admit that Mondi Bags had a duty to follow safety rules and standards to maintain their loading platform and premises in a reasonably safe condition.

**REQUEST FOR ADMISSION 24:** Admit that Mondi Bags had a duty to follow safety rules and standards to protect the Plaintiff Edward A. Danley from foreseeable workplace dangers about which Mondi Bags knew or should have known about.

**REQUEST FOR ADMISSION 25:** Admit that Mondi Bags knew or should have known that a person losing their footing on surfaces covered with Tall Oil Soap was a foreseeable risk.

**REQUEST FOR ADMISSION 26:** Admit that Mondi Bags knew or should have known that falls from the loading platform from which Plaintiff Edward A. Danley fell were a foreseeable risk.

**REQUEST FOR ADMISSION 27:** Admit that Mondi Bags was required to provide and maintain clean and dry surfaces on the platform and on the passageways and stairs used to access the platform.

**REQUEST FOR ADMISSION 28:** Admit that Mondi Bags was required to have a guard rail or other suitable protections on the front (north) side of the platform.

**REQUEST FOR ADMISSION 29:** Admit that Mondi Bags was required to follow safety rules and standards to protect Plaintiff Edward A. Danley from dangers he might discover.

4

**REQUEST FOR ADMISSION 30:** Admit that Mondi Bags was required to follow safety rules and standards to anticipate dangerous conditions that would cause physical harm, regardless if such dangerous conditions were open and obvious.

**REQUEST FOR ADMISSION 31:** Admit that Mondi Bags was required to follow safety rules and standards to inspect the loading facility and premises to discover the actual condition of the premises for the safety of the Plaintiff Edward A. Danley and others.

**REQUEST FOR ADMISSION 32:** Admit that Mondi Bags was required to follow safety rules and standards to institute a training program for employees to teach them how to inspect the loading facility and premises to discover the actual condition of the premises for the safety of the Plaintiff Edward A. Danley and others.

**REQUEST FOR ADMISSION 33:** Admit that Mondi Bags was required to follow safety rules and standards to provide training to employees to teach them how to inspect the loading facility and/or premises to discover the actual condition of the premises for the safety of the Plaintiff Edward A. Danley and others.

**REQUEST FOR ADMISSION 34:** Admit that Mondi Bags was required to follow safety rules and standards to warn of dangerous conditions discovered following an inspection of the loading facility and premises.

**REQUEST FOR ADMISSION 35:** Admit that Mondi Bags was required to follow safety rules and standards to institute a training program for employees to teach them how to warn of dangerous conditions discovered following inspection of the loading facility and/or premises.

5

**REQUEST FOR ADMISSION 36:** Admit that Mondi Bags was required to follow safety rules and standards to provide training to employees to teach them how to repair the premises after discovering a defective condition.

**REQUEST FOR ADMISSION 37:** Admit Mondi Bags was required to follow safety rules and standards to use ordinary care for the safety of the Plaintiff Edward A. Danley and others.

**REQUEST FOR ADMISSION 38:** Admit that Mondi Bags was required to hire only employees with the skills and aptitude needed to follow the safety rules and standards listed above and to supervise their performance to ensure the employees complied with the safety rules and standards listed above.

**REQUEST FOR ADMISSION 39:** Admit that Mondi Bags' negligence was a proximate cause of the Plaintiff Edward A. Danley's injuries.

**REQUEST FOR ADMISSION 40:** Admit that if you do not respond to these Requests for Admissions, it is because you are liable for all of the Plaintiffs' injuries and damages, and because you are completely at fault without any defense to the Plaintiffs' *Complaint* filed herein.

Dated this 29th day of September, 2015.

Respectfully submitted,

Chaney Law Firm, P.A.
Don P. Chaney, AR BIN 78027
Nathan P. Chaney, AR BIN 2004109
S. Taylor Chaney, AR BIN 2010011
P.O. Box 1405
Arkadelphia, AR 71923
Email: don@chaneylaw.com
Telephone: 870-246-0600
Telefax: 870-246-0602

By: _____
Don P. Chaney, AR BIN 78027

6

And

Robert C. Williamson
David Baria
Baria-Williamson, PLLC
4316 Old Canton Road, Suite 100A
Jackson, MS 39211
Email: rcw@barialaw.com
Telephone: 601-948-6005
Telefax: 601-948-0306

Attorneys for Plaintiffs

**CERTIFIED MAIL**

7014 1820 0002 0927 0445

UNITED STATES POSTAGE
PITNEY BOWES
$013.48⁰
02 1P
0001055158  SEP 30 2015
MAILED FROM ZIP CODE 71923

Chaney Law Firm
526 Main Street
Suite 204
P.O. Box 1405
Arkadelphia, AR 71923

Corporation Service Company
Registered Agent for Service of Process
for Mondi Bags USA, LLC
300 Spring Building, Suite 900
300 South Spring Street
Little Rock, Arkansas  72201



```
Job  : 69
Date: 11/4/2015
Time: 9:07:44 AM
```

# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"MID-AMERICA PACKAGING, LLC", A DELAWARE LIMITED LIABILITY
COMPANY,

"BLUEGRASS MULTIWALL BAG COMPANY, LLC", A DELAWARE LIMITED
LIABILITY COMPANY,

"BLUEGRASS FLEXIBLE PACKAGING COMPANY, LLC", A DELAWARE
LIMITED LIABILITY COMPANY,

"DELTA NATURAL KRAFT, LLC", AN ARKANSAS LIMITED LIABILITY
COMPANY,

WITH AND INTO "GRAPHIC FLEXIBLE PACKAGING, LLC" UNDER THE
NAME OF "GRAPHIC FLEXIBLE PACKAGING, LLC", A LIMITED LIABILITY
COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF
DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE ON THE TWENTY-
SEVENTH DAY OF JUNE, A.D. 2012, AT 7:02 O`CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

4166666  8100M
SR# 20150618436

You may verify this certificate online at corp.delaware.gov/authver.shtml

**EXHIBIT**

_B_

Authentication: 10289432

Date: 10-23-15

# Delaware

Page 2

## The First State

*AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE THIRTIETH DAY OF JUNE, A.D. 2012 AT 11:59 O'CLOCK P.M.*

Jeffrey W. Bullock, Secretary of State

4166666  8100M
SR# 20150618436

Authentication: 10289432
Date: 10-23-15

You may verify this certificate online at corp.delaware.gov/authver.shtml

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 07:28 PM 06/27/2012*
*FILED 07:02 PM 06/27/2012*
*SRV 120785667 – 5073146 FILE*

## CERTIFICATE OF MERGER
## OF
## BLUEGRASS MULTIWALL BAG COMPANY, LLC
### (a Delaware limited liability company),

## BLUEGRASS FLEXIBLE PACKAGING COMPANY, LLC
### (a Delaware limited liability company),

## MID-AMERICA PACKAGING, LLC
### (a Delaware limited liability company)

## AND

## DELTA NATURAL KRAFT, LLC
### (an Arkansas limited liability company)

## WITH AND INTO

## GRAPHIC FLEXIBLE PACKAGING, LLC
### (a Delaware limited liability company)

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act, Graphic Flexible Packaging, LLC, executes the following Certificate of Merger:

1.  The name and jurisdiction of formation of each limited liability company which is to merge are:

    | Name | Jurisdiction |
    | --- | --- |
    | Bluegrass Multiwall Bag Company, LLC | Delaware |
    | Bluegrass Flexible Packaging Company, LLC | Delaware |
    | Mid-America Packaging, LLC | Delaware |
    | Delta Natural Kraft, LLC | Arkansas |
    | Graphic Flexible Packaging, LLC | Delaware |

2.  An Agreement and Plan of Merger and Reorganization has been approved and executed by each limited liability company which is to merge.

3.  The name of the surviving limited liability company is Graphic Flexible Packaging, LLC.

4.  The merger shall be effective at 11:59 p.m. local time on June 30, 2012.

5.  The Agreement and Plan of Merger and Reorganization is on file at the principal place of business of the surviving limited liability company which is located at 814 Livingston Court, Marietta, Georgia 30067.

6.     A copy of the Agreement and Plan of Merger and Reorganization will be furnished by the surviving limited liability company, on request and without cost, to any member of any limited liability company which is to merge.

*[Signature on following page]*

IN WITNESS WHEREOF, Graphic Flexible Packaging, LLC has caused this Certificate of Merger to be executed by a manager this _27ᵗʰ_ day of June, 2012.

GRAPHIC FLEXIBLE PACKAGING, LLC

By: _Laura Lynn Smith_
Name: _LAURA LYNN SMITH_
Title: _ASSISTANT SECRETARY_

LEGAL02/33473452v1